**United States District Court**
**Eastern District of Texas**
**Lufkin Division**

|  |  |  |
|---|---|---|
| Personal Audio, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No._____ |
| Apple Inc., | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | |
| | ) | |

---

### Complaint for Patent Infringement

Plaintiff Personal Audio, LLC ("Personal Audio") states and alleges as follows:

### Introduction

1.  In *Personal Audio, LLC v. Apple Inc., et al.*, Case Number 9:09-CV-00111-RC ("*Personal Audio v. Apple I*"), Apple Inc. ("Apple") and Personal Audio entered into two stipulations expressly reserving newly released products for a second lawsuit.  Personal Audio is bringing that suit with the present Complaint. Apple has argued that the July 8, 2011 jury verdict awarding a lump sum applies to all Apple products regardless of whether they were included in that trial or even that lawsuit. However, as explained in more detail in Personal Audio's letter to the Court on July 14, 2011 (attached to this Complaint as Exhibit A), Personal Audio is entitled to pursue this action against Apple for infringing conduct not considered by the jury. The trial between the parties that occurred between June 23, 2011 and July 8, 2011 only concerned infringement by iPod Classic Generations 1 through 6, iPod Mini Generations 1 and 2, and iPod Nano Generations 1 through 5. The jury instructions given by the Court specifically instructed

the jury to disregard any evidence that Personal Audio was entitled to damages relating to products not accused in that litigation. Furthermore, the verdict form instructed the jury to award damages only for the conduct the jury found to infringe. Consequently, the damages award issued by the jury on July 8, 2011, does not cover any other products.

2.      The accused products in this Complaint are the iPod Nano Generation 6, iPod Shuffle Generation 4, iPod Touch Generation 4, iPhone 4, and iPad 2. All of these products were the subject of Apple's stipulations to reserve these products for this lawsuit with the exception of the iPad 2, which was released after both stipulations.

## Parties

3.      Personal Audio is a Texas limited liability company.

4.      Apple is a California corporation, with its principal place of business at 1 Infinite Loop, Cupertino, California, 95014, and doing business throughout this judicial district and throughout the United States.

## Jurisdiction

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

6.      This Court has personal jurisdiction over Apple because it has committed acts giving rise to this action within Texas and within this judicial district and has established minimum contacts within the forum such that the exercise of jurisdiction over Apple would not offend traditional notions of fair play and substantial justice. For example, Apple has committed acts of infringement in this District, by among others things, offering to sell and selling products that infringe the asserted patent, including portable music players. Apple is authorized to do

business in Texas and maintains an agent for service of process, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas, 75201.

**Venue**

7.      Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b) because Apple has committed acts within this judicial district giving rise to this action, and Apple has and continues to conduct business in this judicial district, including one or more acts of selling, using, importing and/or offering for sale infringing products or providing service and support to Apple's customers in this District.

8.      Venue in the Eastern District of Texas is also proper because Personal Audio is organized and governed by the LLC laws of Texas and is subject to taxes in Texas. Personal Audio maintains a registered agent for service of process in Texas. Personal Audio maintains office space in Beaumont, Texas, within this District, at 550 Fannin Street, Suite 500, where Personal Audio maintains originals and copies of its documents.  Personal Audio also maintains other contacts within this District, such as a bank account.

9.      Venue in the Eastern District of Texas is also proper because of judicial economy. Judge Ron Clark presided over *Personal Audio v. Apple I.* Over the course of that case, Judge Clark issued numerous pretrial orders and presided over a jury trial lasting three weeks. The allegations set forth below include common issues of law and fact, which Judge Clark is already familiar with.

10.     On July 9, 2010, Judge Clark appointed Dr. Frank Shipman as a technical advisor in *Personal Audio v. Apple I.* Dr. Shipman is a professor of computer science at Texas A&M University. As part of his duties as technical advisor, Dr. Shipman analyzed the asserted patent, the parties' pertinent briefs, and relevant declarations in order to assist the Court in

understanding the technology involved in the asserted patent from the point of view of one skilled in the art.

11.     As part of *Personal Audio v. Apple I*, Judge Clark issued multiple complex orders construing the terms of United States Patent No. 6,199,076, entitled "Audio Program Player Including a Dynamic Program Selection Controller" ("the '076 patent"). On December 21, 2010, Judge Clark issued a detailed order construing the non-means-plus-function terms of the '076 patent. On January 31, 2011, Judge Clark issued a second order in which he denied Apple's motion for summary judgment of indefiniteness and construed the means-plus-function terms of the '076 patent. For each means-plus-function term, Judge Clark identified the disclosed function and corresponding structure. For each means-plus-function term for which the corresponding structure included a computer processor, Judge Clark identified the algorithmic steps disclosed in the specification that corresponded to that means-plus-function term.

12.     Judge Clark also had the opportunity to evaluate Apple's defenses in *Personal Audio v. Apple I*. On January 31, 2011, Judge Clark denied Apple's motion for summary judgment of indefiniteness. On June 21, 2011, Judge Clark denied Apple's motions for summary judgment of noninfringement and invalidity. On July 5, 2011, Judge Clark ruled that Apple's written description and marking defenses failed as a matter of law.

13.     Judge Clark also presided over a jury trial between Personal Audio and Apple lasting ten days. At the conclusion of that trial, the jury found that Apple infringed the '076 patent, and that the '076 patent was not anticipated or obvious.

14.     In addition to the jury trial, Judge Clark conducted a bench trial on Apple's inequitable conduct defense. The Court rejected that defense.

## Background

**Personal Audio**

15.     James D. Logan ("Logan") founded Personal Audio.

16.     Logan, Charlie G. Call, and Daniel F. Goessling are co-inventors of the '076 patent. The three inventors filed their patent application on October 2, 1996. The United States Patent Office duly issued the '076 patent on March 6, 2001.

17.     The '076 patent claims, among other inventions, an audio player capable of downloading or receiving a navigable playlist.

18.      Personal Audio owns the '076 patent. Personal Audio maintains all rights to enforce the '076 patent.

**Apple**

19.     Apple sells the popular iPod, iPhone, and iPad devices.

20.     Apple did not start work on the iPod line of products until 2001. This was over four years after the inventors on the '076 patent filed their patent application.

21.     Apple does not have any patents on an audio player that can receive or download a navigable playlist. Apple does not have any patents that would be considered material to the '076 patent.

22.     Apple considers the ability to receive or download a navigable playlist a "competitive necessity" for the iPod.

23.     Apple has not considered removing the ability for iPods to receive or download navigable playlists.

24.     Steve Jobs, Apple's CEO, has recognized the importance of downloadable navigable playlists. Mr. Jobs has publicly stated that "Nobody thinks of albums anymore,

anyway. People think of playlists and mixes. We'll still sell albums as artists put them out, but for most consumers of popular music, we think they'll more likely buy single tracks that they like. And then they'll organize them into customized playlists in their computers and on their iPods."

25.    Apple has stressed the importance of iPod functionality, and of playlists in particular, to the iPhone 4. In a national television advertising campaign, Apple stated: "If you don't have an iPhone, you don't have an iPod in your phone with your music and your playlists. And you don't have iTunes on your phone, the world's number one music store, with Genius, that recommends new music based on the songs you already have. Yep, if you don't have an iPhone, well, you don't have an iPhone."

26.    On or around September 1, 2010, Steve Jobs stressed the importance of playlists to the iPod Shuffle Generation 4, stating: "So [consumers] love the buttons of the second generation but they loved VoiceOver and having playlists on their iPod from the third. So what are we going to do? Let's make the best of both. The new iPod Shuffle . . . It's got buttons, VoiceOver, and playlists . . . It's easy to use with the buttons, you never have to look down at the product to change its volume or go to the next or previous song. It's got playlists, so you can ask it to speak the playlist and it'll speak through just like the third generation iPod Shuffle and you can pick a playlist that you want, so you can have multiple playlists on your iPod Shuffle."

27.    Upon being activated, the iPod Nano Generation 6 displays "Playlists" in the top left corner of the first menu screen. A representative menu screen is pictured below:



28.    Within the "iPod" application on the iPhone 4, "Playlists" is one of four items displayed on the lower toolbar. A representative menu screen is pictured below:



29.     Within the "Music" application on the iPod Touch Generation 4, "Playlists is one of four items displayed on the lower toolbar. A representative menu screen is pictured below:



30.     Within the "iPod" application on the iPad 2, a user's playlists are displayed under "Library" on the left side of the screen. A representative menu screen is pictured below:



31.     Apple has emphasized to consumers the ability of iPod Shuffle Generation 4 to download or receive multiple playlists. For example, Apple's website states the following:



***Personal Audio v. Apple I***

32.     Personal Audio sued Apple for patent infringement on June 25, 2009. This lawsuit covered Personal Audio's allegations that the following iPod products infringed: iPod Classic Generations 1 through 6, iPod Mini Generations 1 and 2, and iPod Nano Generations 1 through 5; the following iPhone products infringed: iPhone, iPhone 3G, and iPhone 3GS; and the first iPad infringed.

33.     The parties entered into stipulations on July 22, 2010 (attached to this Complaint as Exhibit B) and September 20, 2010 (attached to this Complaint as Exhibit C), that any Apple

product released after January 27, 2010 would not be included in the *Personal Audio v. Apple I* suit so long as the parties did not agree that its relevant functionality was substantially the same as that of a product accused in that lawsuit.

34.     Specifically, the parties agreed that "Apple would not argue that Personal Audio could or should have added such unannounced product to the above-captioned lawsuit."

35.     The parties' stipulation covers at least the iPod Nano Generation 6, iPod Shuffle Generation 4, iPod Touch Generation 4, iPhone 4, and iPad 2, which Apple released after January 27, 2010. By virtue of the parties' stipulation, these products could not have been brought in the *Personal Audio v. Apple I* suit.

36.     The parties specifically agreed that "Personal Audio may initiate a separate lawsuit accusing the New Products of infringement of the Patents."

37.     In *Personal Audio v. Apple I*, Apple raised defenses of: non-infringement, invalidity (anticipation, obviousness, written description, enablement, and best mode), unenforceability (inequitable conduct, equitable estoppel, and prosecution laches), laches, and failure to mark.

38.     During the jury trial for *Personal Audio v. Apple I*, Apple called Anthony Fadell, its former Senior Vice President for the iPod Division and one of the creators of the iPod, to testify on its behalf. Mr. Fadell testified that he never considered removing the ability of the iPod to download playlists, because "if we removed that, it would be a problem for the product to be competitive in the marketplace." Mr. Fadell further testified that the ability to download or receive playlists was a "competitive necessity."

39.     During the jury trial for *Personal Audio v. Apple I*, Apple called Stan Ng, its Senior Director for Worldwide Marketing, to testify on its behalf. Mr. Ng testified that he never

considered removing the ability to download or receive playlists from the iPod. Mr. Ng also testified that he never considered removing the ability to navigate within a playlist from the iPod. When asked what features he would remove from an iPod if asked, Mr. Ng identified alarms, calendars, contacts, the ability to reorganize the menu, games, and the ability to use the iPod as a hard drive. He did not identify the ability to download or receive navigable playlists as a feature he would remove.

40.      During the jury trial for *Personal Audio v. Apple I*, Apple called Dave Heller, its corporate representative and Director of Engineering for the iTunes desktop application software. When asked what features he would remove from an iPod if asked, Mr. Heller identified games, contacts, and calendars. He did not identify the ability to download or receive navigable playlists as a feature he would remove. Mr. Heller further testified that he would never suggest that the ability to receive or download navigable playlists be removed from the iPod.

41.      Judge Clark held as a matter of law that Apple failed to establish its written description and marking defenses. Judge Clark also found that Apple abandoned its enablement and best mode defenses. Apple withdrew its equitable estoppel defense in December 2010. Apple withdrew its prosecution laches and most of its inequitable conduct allegations on July 4, 2011. Judge Clark held that Apple failed to establish inequitable conduct.

42.      In *Personal Audio v. Apple I*, Apple raised both anticipation and obviousness defenses. Specifically, Apple asserted that the '076 patent was anticipated by the DAD486x Digital Audio Delivery System Operation Manual, version 6.0A ("DAD manual"), and DAD486x system. Apple also asserted that the '076 patent was rendered obvious by numerous combinations of the DAD manual, DAD486x system, Sound Blaster 16 User's Guide for Windows 95, "Architecting Personalized Delivery of Multimedia Information" by S. Loeb,

Audioshop Manual, Sony Discman, and Windows 95 Resource Kit. The jury rejected all of Apple's anticipation and obviousness defenses.

43.     The jury determined that the iPod Classic Generation 3, iPod Classic Generation 4, iPod Classic Generation 5, iPod Classic Generation 6, iPod Mini Generation 1, iPod Mini Generation 2, iPod Nano Generation 1, iPod Nano Generation 2, iPod Nano Generation 3, iPod Nano Generation 4, and iPod Nano Generation 5 infringed claims 1, 3, and 15 of the '076 patent.

44.     The jury awarded Personal Audio $8,000,000 in damages for the specific infringement the jury found. The jury was instructed to consider only the following eight groups of products in assessing damages: Group 1: iPod Classic Generation 3; Group 2: iPod Mini Generations 1 and 2, and iPod Classic Generation 4; Group 3: iPod Classic Generation 5; Group 4: iPod Nano Generation 1; Group 5: iPod Nano Generation 2; Group 6: iPod Nano Generation 3 and iPod Classic Generation 6; Group 7: iPod Nano Generation 4; and Group 8: iPod Nano Generation 5. The Court further instructed the jury to disregard any evidence about products outside these eight groups in assessing damages. None of the products accused of infringement below falls within these eight groups.

**Apple's Willful Patent Infringement**

45.     Apple has and/or continues to make, use, sell, and offer to sell the iPod Nano Generation 6, iPod Shuffle Generation 4, iPod Touch Generation 4, iPhone 4, and iPad 2.

46.     Apple has infringed and continues to infringe the '076 patent by making, using, selling, and/or offering to sell within the United States products that embody one or more of the claims of the '076 patent, or by contributing to the infringement of the '076 patent, inducing others to infringe the '076 patent, or carrying out other acts constituting infringement under 35 U.S.C. § 271(f). Such infringing conduct includes, but is not limited to, making, using, operating,

13

selling, or offering to sell at least the iPod Nano Generation 6, iPod Shuffle Generation 4, iPod Touch Generation 4, iPhone 4, and iPad 2.

47.     Apple does not have a license or permission to use the claimed subject matter in the '076 patent.

48.     Due to Apple's infringing and unauthorized use of the claimed subject matter in the '076 patent, Apple has captured and dominated the mobile player market.

49.     As a direct and proximate result of Apple's infringement of the '076 patent, Personal Audio has been injured and has been caused significant financial damage.

50.     Apple's infringement of the '076 patent has been and is willful.

51.     Apple knew or should have known of the '076 patent at least as early as October 2001.

52.     Apple disregarded an objectively high likelihood that making, using, selling, and offering to sell the iPod Nano Generation 6, iPod Shuffle Generation 4, iPod Touch Generation 4, iPhone 4, and iPad 2 infringed the '076 patent.

53.     Apple has known of its actual infringement at least since Personal Audio filed its complaint in *Personal Audio v. Apple I* on June 25, 2009.

54.     Personal Audio provided a detailed explanation of Apple's infringement when it served its infringement contentions in *Personal Audio v. Apple I* on February 1, 2010.

55.     Apple has been an adjudged infringer since July 8, 2011.

56.     Apple will continue to willfully infringe the '076 patent, and thus cause irreparable injury and damage to Personal Audio, unless enjoined by this court.

## Prayer for Relief

**Wherefore**, Personal Audio prays for the following relief:

1.      A declaration that Apple infringed the '076 patent, and is liable to Personal Audio for infringement.

2.      A declaration that Apple's infringement has been willful.

3.      An award of damages adequate to compensate Personal Audio for Apple's infringement of the '076 patent.

4.      An award of treble damages pursuant to 35 U.S.C. §284 for Apple's willful infringement.

5.      A post-judgment equitable accounting of damages for the period of infringement of the '076 patent following the period of damages established by Personal Audio at trial.

6.      An order enjoining Apple from infringing, inducing others to infringe, or contributing to the infringement of the '076 patent.

7.      If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing compulsory license or such other relief as the Court deems appropriate.

8.      An order requiring Apple to deliver for destruction all infringing products in its possession.

9.      A finding that this case is exceptional pursuant to 35 U.S.C. § 285.

10.     An award of prejudgment interest, costs and disbursements, and attorney fees.

11.     Such other and further relief as the Court deems Personal Audio may be entitled to in law and equity.

## Demand for Trial by Jury

A jury trial is demanded on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 20, 2011                          Respectfully submitted,

                                              By:     /s/ Charles W. Goehringer Jr.
                                              **Robins, Kaplan, Miller & Ciresi L.L.P.**
                                              Ronald J. Schutz   (MN Bar No. 130849)
                                              (Eastern District of Texas Member)
                                              (Lead Counsel)
                                              Jake M. Holdreith  (MN Bar No. 211011)
                                              (Eastern District of Texas Member)
                                              Cyrus A. Morton (MN Bar No. 287325)
                                              (Eastern District of Texas Member)
                                              David A. Prange (MN Bar No. 329976)
                                              (Eastern District of Texas Member)
                                              Patrick M. Arenz  (MN Bar No. 0386537)
                                              (Eastern District of Texas Member)
                                              Daniel R. Burgess (MN Bar No. 0389976)
                                              (Eastern District of Texas Member)
                                              800 LaSalle Avenue, Suite 2800
                                              Minneapolis, Minnesota 55402
                                              Telephone: (612) 349-8500
                                              Facsimile:  (612) 339-4181
                                              E-mail:   RJSchutz@rkmc.com
                                                        JMHoldreith@rkmc.com
                                                        CAMorton@rkmc.com
                                                        DAPrange@rkmc.com
                                                        PMArenz@rkmc.com
                                                        DRBurgess@rkmc.com

                                              Annie Huang        (MN Bar No. 0327979)
                                              (Eastern District of Texas Member)
                                              601 Lexington Avenue, Suite 3400
                                              New York, NY 10022
                                              Telephone:  (212) 980-7400
                                              Facsimile:    (212) 339-4181
                                              E-mail:       AHuang@rkmc.com

                                              **Germer Gertz, L.L.P.**
                                              Lawrence Louis Germer
                                              (TX Bar # 07824000)
                                              Charles W. Goehringer, Jr.
                                              (TX Bar # 00793817)
                                              550 Fannin, Suite 400
                                              P.O. Box 4915
                                              Beaumont, Texas 77701
                                              Telephone: (409) 654-6700

Telecopier: (409) 835-2115
E-Mail:   llgermer@germer.com
          cwgoehringer@germer.com

**Attorneys for Plaintiff Personal Audio, LLC**